UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAIME MARTORELL, | Case No. 3:19-cv-00523-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| DEBASHIS BAGCHI, *et al.*, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiff Jaime Martorell brings claims against Defendants Debashis Bagchi and John Bengtson for violations of the Fair Labor Standards Act. (ECF No. 1.) Before the Court are cross-motions for summary judgment.[1] (ECF Nos. 77-1 ("Bagchi's Motion"), 78-1 ("Bengtson's Motion") (together, "Defendants' Motions"), 79 ("Plaintiff's Motion").) Defendants argue they are entitled to summary judgment because they are not employers under the FLSA and because Plaintiff is an exempt employee not covered by the statute.[2] (ECF Nos. 77-1, 78-1.) Plaintiff counters that Defendants are employees, that Defendants waived their exemption arguments, and that he is entitled to summary judgment on his claims. (ECF No. 79.) The Court heard oral argument on the Motions on August 20, 2021.

After considering the parties' briefs and arguments, the Court will deny Defendants' Motions. The Court finds that Defendants have waived their exemption defenses, that Bagchi is an employer under the FLSA, and that there is a genuine

---

[1] Plaintiff responded to Defendants' motions. (ECF Nos. 85, 86.) Defendants replied. (ECF No. 90, 91.) Likewise, Defendants responded to Plaintiff's motion. (ECF Nos. 83, 84.) Plaintiff replied. (ECF No. 92.)

[2] Although they were submitted separately, Bagchi's Motion and Bengtson's Motion are identical, except insofar as they refer to their particular job duties.

dispute of material fact about whether Bengtson is likewise an employer. However, the Court will also deny Plaintiff's Motion in part because he has failed to provide evidence to support summary judgment on his overtime violation claim. But, as further explained below, the Court will grant Plaintiff's Motion on his minimum wage violation claim against Bagchi.

## II. BACKGROUND[3]

This dispute arises out of Plaintiff's employment at AirWire, a tech startup in Reno, Nevada. (ECF No. 77-1 at 8.) Defendant Bagchi is the President, CEO, and founder of AirWire, as well as a member of the Board of Directors. Defendant Bengtson is the CFO and Chairman of the Board. (*Id.*) At the times relevant to this litigation, Plaintiff served as AirWire's Vice President of Marketing. (ECF No. 79-1 at 178-79.)

### A. Initial Hire and Independent Contractor Agreement

Plaintiff claims that that Bagchi recruited him from the Bay Area. (ECF No. 79 at 2.)[4] Plaintiff first began to work for AirWire as an independent contractor in April of 2015. (*Id.* at 9; ECF No. 79 at 6.) Bagchi negotiated the independent contractor agreement (ECF No. 77-5 ("Contractor Agreement")) with Plaintiff, which they both signed.[5] (ECF No. 77-2 at 2; ECF No. 79-1 at 5.) The scope of Plaintiff's duties included introducing the company to European service providers and other potential communications customers. (ECF No. 77-5 at 2.) Plaintiff remained in this position until May 2016, when he transitioned to full-time employment. (ECF No. 79-1 at 57 (noting "resign for new position with company").)

---

[3] The facts referenced are undisputed unless noted otherwise.

[4] While Bagchi avers that when Gilbert Amelio, a member of the Board of Directors, recommended that AirWire hire Plaintiff, and that accordingly the Board of Directors hired Plaintiff (ECF No. 83 at 8). However, in Bagchi's Motion, he cites to Plaintiff's later hire as Vice President of Marketing, not his initial independent contracting agreement, so it is unclear what Bagchi is disputing.

[5] In Plaintiff's Motion, he argues that Bengtson prepared the independent contractor agreement, citing to Plaintiff's declaration. (ECF No. 79 at 7.) However, Plaintiff's declaration states instead that Bagchi prepared the independent contractor agreement, not Bengtson. (ECF No. 79-1 at 5.)

### B. Employment Agreement as Vice President of Marketing

Bagchi states that Plaintiff came to him in May of 2016 seeking to become a full-time employee of AirWire. (ECF No. 77-2 at 2.) Bagchi submitted Plaintiff to the Board of Directors and recommended they hire Plaintiff as Vice President of Marketing. (ECF No. 79-1 at 42.) On May 16, 2016, Plaintiff was offered the position of Vice President of Marketing at AirWire. (ECF No. 77-6 ("Employment Agreement").) The offer letter states that Plaintiff's position "report[s] directly to the AirWire President/CEO." (*Id.* at 2.) The annual salary of $175,000 was to be paid in semi-monthly installments of $7,291.67, "payable in accordance with the Company's standard payroll policies." (*Id.*) The offer letter is signed by Bagchi as "Chief Executive Officer" and Plaintiff. (*Id.* at 3.) Bengtson admits to preparing the offer letter (ECF No. 79-1 at 48), but states that its terms came from Bagchi (*id.* at 43).

Submitted with the offer letter is a copy of the resolution of the Board of Directors agreeing to create the position of Vice President of Marketing, to hire Plaintiff, and to pay plaintiff a yearly salary of $175,000 along with stock options. (ECF No. 77-6 at 4-6.) The resolution is signed by Defendants Bagchi and Bengtson, and the four other directors: Gilbert Amelio, Pete Cladianos III, Harry Edelson, and Roger Elton. (*Id.* at 5-6.) Bengtson states that Bagchi submitted Plaintiff's proposed employment to the Board of Directors with minimal formality, basically stating "here's the guy I want to hire and here is the salary I want to pay him and here's the job I want to pay him for," and asking for the Board's approval. (ECF No. 79-1 at 41-42.)

Plaintiff's employment officially began June 1, 2016. (ECF No. 77-6 at 2.)

### C. Plaintiff's Pay and AirWire's Financial Trouble

Plaintiff was paid approximately $14,000 in June of 2016, but then was not paid again during the remaining 30 months of his employment. (ECF No. 79-1 at 5.) Bagchi stated that in early July, "it became apparent AirWire did not have the funds to make payroll and fund the Company's operations." (ECF No. 77-2 at 3.) Bagchi states that Plaintiff and the other officers of the company were informed of AirWire's situation and

told "that they were free to stay with the Company, remaining working without pay, or free to leave." (*Id.*)

Bagchi states that in July 2016, AirWire engaged four investors in Incline Village to invest $2.5 million, for a total of $10 million. (*Id.*) However, these negotiations fell through. (*Id.*) Bagchi further stated that AirWire stopped paying all salaries as of July 2016, including to himself and Bengtson. (*Id.* at 4.) However, AirWire began providing some "advances" to AirWire's employees.[6] (ECF No. 77-7.) The records Bagchi provides indicate that some employees received payments of around $1,000 every two weeks, somewhat regularly. (*Id.* at 26.) Additionally, Bengtson appears to have received around $164,329 in payroll advances between February 24, 2017, and December 20, 2019. (*Id.* at 24.) What Bagchi received is less clear, as many itemized payments are not labelled, and several pages of records are devoted to personal charges with the company credit card. (*Id.* at 4-20.) However, these records seem to indicate that Bagchi incurred around $212,371.02 worth of expenses between October 2016 and February 2020. (*Id.* at 20.)

### D. Investment and Executive Employment Agreement

On January 17, 2017, Plaintiff entered into an agreement in which he either loaned or invested $500,000 into AirWire from his family trust. (ECF No. 79-1 at 222-25.) The security became due January 31, 2018, and the principal accrued simple interest at a rate of 6% per year.[7] (*Id.* at 222.)

One day later, on January 18, 2017, Plaintiff signed a new employment agreement, which appears to state the same job duties at the same salary for a renewed 24-month period. (ECF No. 77-13 at 2 ("Executive Agreement").) The

---

[6]These transfers are indicated via inconsistently labelled spreadsheets. (ECF No. 77-7.)

[7]When AirWire failed to make payments on the promissory note, Plaintiff pursued a breach of contract action in state court. (ECF No. 79-2 at 211-24.) Summary judgment was entered in favor of Plaintiff and AirWire was ordered to pay $633,750 for the principal and accrued interest prior to November 7, 2019, plus attorney's fees and costs, plus additional interest which continued to accrue. (*Id.* at 224.)

4

Executive Agreement includes a bonus provision, stating AirWire will pay Plaintiff a semi-annual bonus of $125,000 for a total of $500,000 over the term of the agreement. (*Id.* at 2-3.) Bagchi, as CEO, and Plaintiff signed the Executive Agreement. (*Id.* at 7.)

### E.  Resignation and Commencement of Litigation

On October 11, 2016, Bagchi sent an email to AirWire employees informing them that as of October 31, 2016, AirWire may not be able to afford health insurance. (ECF No. 79-1 at 201.) AirWire's employee health insurance was subsequently terminated for nonpayment January 1, 2017. (*Id.* at 227.)

Despite attempts to attract new investors, between July 2017 and October 2018 all members of the Board of Directors resigned except Bagchi and Bengtson. (ECF No. 77-19.) In fact, all of AirWire's officers eventually resigned except Plaintiff, Bagchi, Bengtson, and the Vice President of Sales Gerardo Gonzalez. (ECF No. 77-2 at 3.) Plaintiff fulfilled the terms of the Executive Agreement and worked for two-years, resigning in January 2019. (ECF No. 79-2 at 177.)

Seven months later, Plaintiff initiated this action. (ECF No. 1.) Plaintiff asserts two causes of action in the Complaint—failure to pay minimum wage in violation of 29 U.S.C. § 206 and failure to pay overtime in violation of 29 U.S.C. § 207. (*Id.* at 4-5.)

## III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue,

however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

**IV.  DISCUSSION**

Defendants they are entitled to summary judgment because they are not statutory employers under the FLSA and, even if they were, Plaintiff is an exempt-employee and may not invoke the FLSA's protections. The Court first addresses whether either of Defendants exemption arguments are meritorious. Because the Court finds that Defendants waived their exemption arguments, the Court then considers whether Defendants are "employers" within the meaning of the FLSA. Although the Court finds there is a factual dispute about whether Bengtson is an employer under the

1  FLSA, Bagchi unquestionably is. The Court therefore also considers whether Plaintiff is entitled to summary judgment on his minimum wage and overtime violations claims against Bagchi. Because Plaintiff has failed to support his overtime violation claim with sufficient evidence to justify summary judgment, the Court will therefore deny Plaintiff's Motion on that claim. However, the Court will grant Plaintiff's Motion on the minimum wage violation claim against Bagchi because the parties do not dispute that Plaintiff was not paid anything for over 30 months.

### A. FLSA Exemptions and Waiver

The minimum wage and maximum hours requirements of the FLSA do not apply to certain exempted classes of employees. *See* 29 U.S.C. § 213. In particular, the FLSA exempts from its overtime protections persons "employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." *Id.* at § 213(a)(1). Defendants argue that Plaintiff may not bring claims under the FLSA because he is an exempt employee per the outside salesman and administrative employee exemptions. (ECF Nos. 77-1 at 24-29, 77-2 at 24-29.) Plaintiff counters that because Defendants raised only the executive exemption as an affirmative defense in their answer, all other exemptions are waived.[8] (ECF No. 79 at 19-20.) Defendants claim that they are permitted to raise additional exemption arguments for the first time at summary judgment because Plaintiff does not plead that he would be prejudiced by their inclusion.[9] (ECF Nos. 83 at 30, 84 at 29-30.)

"If a party seeks to assert an affirmative defense, the party 'must affirmatively state' that defense in a responsive pleading." *Corbin v. Time Warner Entertainment-Advance/Newhouse P'ship*, 821 F.3d 1069, 1080 (9th Cir. 2016) (quoting Fed. R. Civ. P. 8(c)(1)). Although the Ninth Circuit has "liberalized the requirement that defendants

---

[8]Defendants do not argue in their Motions that Plaintiff is an exempt executive.

[9]The Court notes that it is not clear from caselaw whether the Plaintiff bears the burden of demonstrating prejudice, or Defendants bear the burden of demonstrating lack of prejudice. That question need not be resolved here, as Plaintiff articulated he was prejudiced at oral argument.

7

must raise affirmative defenses in their initial pleadings . . . defendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) (considering whether a FLSA exemption argument was waived); *see also Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984) ("Although Rule 8 requires affirmative defense to be included in responsive pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion."). But courts have repeatedly reasoned that *Magana* "does not allow a defendant to introduce a new defense at summary judgment when the defendant had previous opportunities to raise the defense." *Hadley v. Kellogg Sales Co.*, Case No. 16-CV-04955-LHK, 2019 WL 3804661, at *13 (N.D. Cal. Aug. 13, 2019) (collecting cases); *see also Ulin v. Lovell's Antique Gallery*, Case No. 09-CV-2268-IEG (BGS), 2010 WL 2839417, at *8 (S.D. Cal. Jul. 19, 2010) (finding a defendant could not assert a FLSA exemption argument for the first time at summary judgment because plaintiffs were prejudiced by their inability to conduct discovery into that issue).

Neither party thoroughly addresses the waiver argument in the briefings, so the Court ordered oral argument on the issue. (ECF No. 93.) After hearing argument, the Court is persuaded that Plaintiff was prejudiced by Defendants' failure to raise their administrative exemption and outside sales exemption arguments before discovery closed.

Defendants raised the executive exemption as an affirmative defense in their answer, but did not raise the outside sales or administrative exemptions until their summary judgment motions.[10] (ECF No. 14 at 5.) Defendants did not renew their executive exemption at summary judgment, but instead rely on two exemption arguments that were not raised. Asserting that an employee is exempt from the FLSA

---

[10] Defendants point to various allegations in their answer and amended answers, along with an expert disclosure report, to contend that they did raise these two affirmative defenses. But there is no dispute that these responsive pleadings did not clearly assert outside sale or administrative exemption as affirmative defenses, similar to the assertion of executive exemption as an affirmative defense.

8

"is an affirmative defense that must be specifically pleaded by the employer, or it is waived." *Lopez*, 2010 WL 2839417 at *8; *see also Robinson v. Open Top Sightseeing S.F., LLC*, Case No. 14-cv-00852-PJH, 2017 WL 2265464, at *6 (N.D. Cal. May 24, 2017) ("An FLSA exemption is an 'affirmative defense' that should have been pleaded in the answer."). Moreover, Defendants never moved to later amend their answer to include their other exemption arguments.[11] Despite the general discovery deadlines being extended three times (ECF Nos. 47, 60, 75), Defendants did not once indicate that they were pursuing either an administrative exemption defense or an outside sales defense. Plaintiff argues that instead, he first learned of these theories when Defendants submitted their brief in a related arbitration proceeding on December 1, 2020 (ECF No. 79-2 at 194-209), which was ten days after the close of discovery in this case (ECF No. 75).

The Court finds that Plaintiff was prejudiced by the lack of notice. Although Plaintiff did not explain how he was prejudiced by this delay in his summary judgment motion or in his oppositions to Defendants' Motions, Plaintiff's counsel explained in detail at oral argument what discovery he would have conducted into these claimed exemptions had he known they would be raised in this litigation. Specifically, Plaintiff's counsel detailed the people he would depose, the types of questions he would have included in requests for interrogatories and production, and the ways in which the administrative and outside sales exemption would have called for different expert testimony to differentiate between marketing and sales. These arguments persuaded the Court that Defendants' failure to timely raise their new exemption arguments did prejudice Plaintiff. *See Magana*, 107 F.3d at 1446

Moreover, the Court is not persuaded that Plaintiff's attempt to preempt the administrative and outside sales exemption arguments in his Motion indicates he was not prejudiced. (ECF No. 79 at 24.) Plaintiff had nine days between receiving notice

---

[11] Even though the parties stipulated to permit Defendants to amend their answer in January 2020 (ECF No. 20), Defendants' amended answer (ECF No. 23) did not include either of these exemption arguments.

9

through the arbitration brief and submitting his summary judgment motion to attempt to answer the arguments he now had reason to believe Defendants would make. That Plaintiff was not taken entirely by surprise, but had instead just over a week to prepare without the ability to conduct discovery into these issues, does not disprove his prejudice.

Because the Court finds the administrative exemption and outside sales exemptions were waived, the Court will not consider Defendants' arguments on those two affirmative defenses.

### B. Employers Under the FLSA

Because Defendants' exemption arguments are not viable in this case, the Court turns to whether Plaintiff may assert FLSA claims against Defendants as his employers. Defendants argue he may not because they are not "employers" within the meaning of the FLSA. (ECF Nos. 77-1 at 21-24; 78-1 at 21-24.) An employer under the FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the FLSA, the definition of employer "is to be given an expansive interpretation." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999). Whether a corporate officer qualifies as an employer "does not depend on isolated factors but rather upon the circumstances of the whole activity." *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009). An individual is an employer within the meaning of the FLSA, and subject to liability, where they "exercise[] control over the nature and structure of the employment relationship, or economic control over the relationship." *Id.* at 1091 (internal quotations omitted). In evaluating the structure of the employer-employee relationship, the Ninth Circuit considers "[w]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539 (1985).

### 1. Bagchi

The Court finds that Bagchi is undoubtedly Plaintiff's employer under the FLSA. Bagchi is the President, CEO, and founder of AirWire. (ECF No. 77-2 at 1.) He signed the Contractor Agreement, Employment Agreement, and Executive Agreement outlining Plaintiff's duties and salary. (ECF Nos. 77-5, 77-6, 77-13.) Bengtson testified that Bagchi presented Plaintiff to the Board of Directors for both his initial hiring and his promotion to full-time employee, and that Bagchi set Plaintiff's salary. (ECF No. 79-1 at 41-42.) Plaintiff's Employment Agreement expressly states that he is to report directly to Bagchi. (ECF No. 77-6 at 2.) And finally, Bengtson testifies that decisions about payroll and payment advances all were decided by or went to Bagchi for approval. (ECF No. 79-1 at 31.)

Bagchi's counterarguments are not persuasive. Rather than disputing any of the above facts, Bagchi argues that he and Plaintiff were similarly situated because they were both executives who had significant responsibilities. (ECF No. 77-1 at 23.) The fact that a tech startup has a "very dynamic" work environment does not permit a company with a clear hierarchal structure to avoid federal labor laws. (*Id.*) Nor does the fact that Plaintiff invested in AirWire disrupt the nature of the employment relationship. The Court finds that Bagchi was Plaintiff's employer under the FLSA and will grant summary judgment for Plaintiff on that issue. Bagchi's Motion will accordingly be denied on the same.

### 2. Bengtson

Whether Bengtson can also be considered Plaintiff's employer is less clear based on the evidence before the Court. Plaintiff argues that Bengtson's control at AirWire was "pervasive." (ECF No. 79 at 16.) But Bengtson's testimony reveals that although he and Bagchi appeared to be at the center of all major decisions involving AirWire's employment and operations, it is unclear whether Bengtson had the authority to make any decisions himself or whether he responded solely to Bagchi's direction.

///

First, Bengtson claims he lacked authority to hire or fire Plaintiff, or to set his salary. (ECF No. 78-1 at 24.) Other than to "vote as one member of the Board of Directors," Bengtson claims he had no authority over Plaintiff's employment. (*Id.* at 23.) In the specific decision to hire Plaintiff, Bengtson claims Bagchi told him "I'm hiring Mr. Martorell and I need an offer letter, and here are the terms." (ECF No. 79-1 at 42.)

Moreover, Bengtson did not supervise Plaintiff as an employee. (ECF No. 78-1 at 23-24.) In fact, he claimed he had hardly any conversations with Plaintiff, about his work or otherwise. (ECF No. 79-1 at 28.) Indeed, Bengtson asserts he and Plaintiff were "peers" at AirWire who made the same salary and were equal vice presidents of the company. (ECF No. 78-2 at 5-6.)

Bengtson further claims to lack authority over financial decisions at AirWire. In his deposition, Bengtson testified that Bagchi makes all decisions on expenditures and that Bagchi would tell him when money was available or when advances should be paid. (ECF No. 79-1 at 16.) He further testifies he does not "have the authority" to authorize payments (*id.*) and that Bagchi alone made the decision not to pay Plaintiff, or any other employee at any given time (*id.* at 20, 31). Yet in his declaration, Bengtson admits he is "responsible for maintaining the financial records and books of account for AirWire." (ECF No. 78-2 at 1.) Moreover, Bengtson alone was responsible for the decision that employees should stop filling out payroll records. (ECF No. 79-1 at 37.)

It is undisputed that Bengtson did not supervise Plaintiff or set his work duties. However, the parties do dispute whether Bengtson had the authority to control AirWire's payroll and financial advances. Moreover, the parties dispute whether Bengtson's role as Chairman of the Board of Directors gave him authority to hire and fire employees at AirWire, even if the decision in Plaintiff's case was instigated by Bagchi. Viewed in the light most favorable to Bengtson, there is a genuine dispute over the scope of Bengtson's authority. Accordingly, the Court will deny summary judgment on the issue of whether Bengtson is Plaintiff's employer under the FLSA.

///

### C. Plaintiff's FLSA Claims

Because the Court has determined that Bagchi is an employer under the FLSA and rejects Defendants' claimed exemption defenses, the Court now considers whether summary judgment against Bagchi is proper on the merits of Plaintiff's claims. Because Plaintiff has failed to provide sufficient evidence to support his overtime violation claim, the Court will deny Plaintiff's Motion in part. But because Bagchi admits to not paying Plaintiff for more than two years, the Court finds that he violated the minimum wage requirement of the FLSA as a matter of law. The Court further reasons, however, that Plaintiff has not shown Bagchi's violation was in bad faith. Accordingly, the Court will grant Plaintiff's Motion in part, and deny it in part.

### 1. Overtime Violation (29 U.S.C. § 207)

Plaintiff claims to have worked, on average, 60 hours per week for two and a half years. (ECF Nos. 79 at 22; 79-1 at 187.) Under the FLSA, employees are entitled to 1.5 times their regular rate of pay for all hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207. While Plaintiff argues his evidence supporting this assertion is "substantial," he provides essentially no support for his general assertion other than his deposition testimony.

The burden of keeping and preserving records of wages, hours, and other practices of employment falls to the employer. *See* 29 U.S.C. § 211(c). If an employer fails to keep such records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). After the plaintiff has so demonstrated, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Although he is correct that Bagchi and Bengtson failed to keep time and payroll records, Plaintiff's assertion alone does not support a "just and reasonable inference" that he did in fact work 60 hours per week on average. *See Tyson Foods*, 577 U.S. at 456. In *Tyson Foods*, the Supreme Court permitted a FLSA representative to rely on a representative sample of time worked to extrapolate violations for a collective action with 444 members and a Rule 23 class action for over 3,300 employees. *See id.* at 449, 457. The workers in that case engaged an expert witness to use keycard data from to determine how many employees had likely been undercompensated. *See id.* at 450-51. They also submitted video evidence to demonstrate how long required donning and doffing practices might reasonably take per employee, averaging together 744 separate observations to create a reliable average. *See id.* at 450. Although the evidence was approximate for each class member, the workers submitted observable, quantifiable evidence to support their specific overtime claims.

Plaintiff lacks such evidence. The only rationale he gives to support his claim that he worked 20 hours a week of overtime every week for more than two years is that he was motivated to work hard for AirWire to be a success. (ECF No. 79 at 22.) But when Plaintiff was asked about the specific time periods he identified in his Complaint during which he claims to have worked substantial overtime, he could not recall what work he was doing for all but one. (ECF No. 83-7 at 104.)

But Plaintiff asserts that his sworn statements are sufficient to support his overtime calculations. (ECF No. 92 at 13.) The Court disagrees. The cases Plaintiff cites to reflect employees with regular, routine work schedules. *See, e.g.*, *Buenaventura v. Champion Drywall, Inc. of Nev.*, Case No. 2:10-cv-00377-LDG (RJJ), 2012 WL 1032428 at *2 (D. Nev. Mar. 27, 2012) (finding contractor-plaintiffs' testimony that they worked eight-hour days six days a week every week created a factual dispute). But Plaintiff himself admits that his work was not consistent—for example, some weeks required him to travel internationally. (ECF No. 83-7 at 104.) He further offers no explanation for how he arrived at his 60 hours per week average. Plaintiff's claim alone does not support a

14

Case 3:19-cv-00523-MMD-CLB   Document 96   Filed 08/25/21   Page 15 of 17

just and reasonable inference that Plaintiff worked 60 hours per week every week for two and a half years. The burden therefore does not shift to Bagchi to disprove his overtime claim.

### 2. Minimum Wage Violation (29 U.S.C. § 206)

Plaintiff's minimum wage violation claim is a different story. The parties do not dispute that Plaintiff was not paid between July 2016 and his resignation in January 2019. Nor do they dispute that Plaintiff continued to work some number of hours during that period. Because Defendants have failed to properly argue that Plaintiff was exempt from the minimum wage protection of the FLSA, the Court finds that as a matter of law, Defendants violated the requirement that every employer must pay a non-exempt employee at a rate not less than $7.25 an hour. *See* 29 U.S.C. § 206(a)(1)(C).

However, the Court limits its finding to liability only. Although Plaintiff has demonstrated a clear violation of § 206, he has not provided sufficient evidence of the hours he worked, as explained above. Based on the scant evidence before the Court, an accurate calculation of compensatory damages is not possible.

### 3. Willful Violation

Although the Court reserves the question of compensatory damages because of Plaintiff's insufficient evidentiary showing, the Court will address whether Bagchi's violation of § 206 was willful and done in bad faith. Plaintiff argues that because Bagchi's FLSA violations were willful and not in good faith, he is entitled to double damages and to benefit from the extended three-year statute of limitations. (ECF No. 79 at 29.) Bagchi argues there is no evidence that the violations were willful, but stops short of affirmatively stating he believed he was complying with the FLSA. (ECF No. 83 at 34.)

When an employer violates section 206 or 207 of the FLSA, they are exposed to a potential double damages provision in section 2016. *See* 29 U.S.C. § 216(b). Only by showing that the violation was in good faith or that they "had reasonable grounds for believing" their conduct did not violate the FLSA can the employer escape the liquidated

damages provision. *See id.* at § 260. FLSA violations are considered willful when the employer either knew or recklessly disregarded whether its conduct violated the FLSA. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003). In other words, an employer's violation is not in good faith when it is "on notice of its FLSA requirements, yet [takes] no affirmative action to ensure compliance with them." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016). But the mere knowledge that the FLSA "was in the picture" is insufficient to establish that a subsequent violation was willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Plaintiff fails to sufficiently demonstrate Bagchi was "on notice" of his FLSA requirements and that he subsequently violated the statute in bad faith. *See Flores*, 824 at 906. The Court is not persuaded that including references to the FLSA in the employee handbook means Bagchi knew that he may be violating the FLSA by failing to pay Plaintiff a minimum wage. Although the Court considers that a reasonable employer would likely be aware that failing to pay employees anything for over two years may run afoul of the law, Bagchi's belief that Plaintiff was exempt from the FLSA's protections is apparent. First, the operative agreement under which Plaintiff was employed expressly referred to him as an "executive." (ECF No. 77-13.) Second, Bagchi's own deposition indicates that he did not have a clear understanding of when an employee is eligible for overtime, even going so far as to suggest that salaried employees are necessarily exempt from the FLSA. (ECF No. 79-1 at 150-51.) Most importantly, Bagchi testified that he believed Plaintiff was also exempt.[12] (*Id.* at 153-54.)

Because Plaintiff has failed to show that Bagchi's violation was knowing or in reckless disregard of the requirements of the FLSA, the Court will deny summary judgment on that issue.

///

---

[12]Although the Court has not determined that Bengtson is an employer and subject to the requirements of the FLSA, the Court does note that Bengtson also testified he did not require time records from Plaintiff because Plaintiff "was an exempt employee. He could come and go as he pleased and did." (ECF No. 79-1 at 36.)

## V. CONCLUSION

For the above reasons, summary judgment is denied on the overtime violations claim against both Bagchi and Bengtson. However, summary judgment is granted on the minimum wage violation claim against Bagchi for liability only. Because there is a genuine dispute about whether Bengtson was one of Plaintiff's joint-employers, summary judgment is also denied on the minimum wage violation claim against Bengtson.

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Debashis Bagchi's motion for summary judgment (ECF No. 77) is denied.

It is further ordered that Defendant John Bengtson's motion for summary judgment (ECF No. 78) is denied.

It is further ordered that Plaintiff Jaime Martorell's motion for summary judgment (ECF No. 79) is granted in part and denied in part, as specified herein.

DATED THIS 25th Day of August 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE